## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KAREN DEWITT,

     Plaintiff,

v.

AL-AMIN BROTHERS
TRANSPORTATION, L.L.C.,

     Defendant.

Case No.: 1:18-cv-04506

**COMPLAINT**

**JURY DEMANDED**

Now comes the Plaintiff, KAREN DEWITT ("Plaintiff"), by and through her attorneys, and for her Complaint against the Defendant, AL-AMIN BROTHERS TRANSPORTATION, L.L.C. ("Defendant"), Plaintiff alleges and states as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages and equitable and injunctive relief for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, all as amended.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12188, and 29 U.S.C. § 2617.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

4. All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

a.      Plaintiff filed a Charge of Discrimination, number 440-2017-05238, with the Equal Employment Opportunity Commission ("EEOC") on October, 13, 2017.

b.      The EEOC issued a Notice of Suit Rights to Plaintiff for said charge on May 16, 2018

**PARTIES**

5.      Plaintiff is an individual who was at all relevant times residing in Lowell, Indiana.

6.      On information and belief, Defendant is a corporation of the State of Illinois, and whose principal place of business is located in Crete, Illinois.

7.      Defendant is a "person" as defined in 42 U.S.C. § 12111(7), as, in accordance with 42 U.S.C. § 2000e(a), it is a corporation that includes one or more individuals.

8.      Plaintiff is a "person" as defined in 42 U.S.C. § 12111(7), as, in accordance with 42 U.S.C. § 2000e(a), she is an individual.

9.      Defendant is an "employer" as defined in 42 U.S.C. § 12111(5)(A), as it is a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10.      Plaintiff is an "employee" as defined in 42 U.S.C. § 12111(4), as she is an individual who was employed by an employer, the Defendant.

11.      Plaintiff was a "qualified individual" as defined in 42 U.S.C. § 12111(8), as she was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position that he held.

12.      Plaintiff is also a member of a legally protected class based upon her age, 55 years old.

2

13.    Plaintiff and Defendant are both "persons" as defined in 29 U.S.C. § 2611(8), as they are both "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

14.    Plaintiff is an "eligible employee" as defined in 29 U.S.C. § 2611(2)(A), as he was an employee who had been employed "for at least 12 months by the employer with respect to whom leave [had been] requested" and had worked for Defendant "for at least 1,250 hours of service with such employer during the previous 12-month period."

15.    Defendant is an "employer" as defined in 29 U.S.C § 2611(4)(i), as it is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

## BACKGROUND FACTS

16.    Plaintiff began her employment with Defendant on or about September 16, 2011.

17.    Plaintiff's most recent position with Defendant was Accounts Payable Coordinator.

18.    Throughout her employment with Defendant, Plaintiff performed the duties of her jobs to all legitimate expectations.

19.    During her employment, Plaintiff consistently informed her supervisors that she suffered from Multiple Sclerosis ("MS"), as well as an intolerance to heat, which is a condition often associated with MS.

20.    As a result of her heat intolerance, whenever Plaintiff was exposed to excessive heat, she would experience fatigue, difficulty concentrating, slowed reactions on the left side of her body, and dizziness.

21.    During her employment, in the office in which Defendant was located, the

temperature was consistently kept at or over 75 degrees by Amina Al-Amin ("Amina").

22.     During one summer during her employment with Defendant, in response to Plaintiff asking for the air conditioning to be turned on, Amina acknowledge that she understood the heat to be a problem for Plaintiff but still refused to turn the air conditioning on.

23.     During another summer, Plaintiff's supervisor, Brenna Bradley ("Bradley"), told Plaintiff that the company was still within the "legal limits" in keeping the temperature set to 75 degrees.

24.     During or about October 2015, Rafi Al-Amin ("Rafi") turned off the air conditioning completely over the course of one Thursday and Friday.

25.     Despite her serious medical condition, Plaintiff was given no consideration to adjust the temperature on the many occasions she felt ill due to the heat in the office.

26.     At one point in time, Plaintiff expressed concern to Bradley that the work she had been performing had not been up to her usual standards because she hadn't been feeling well due to the hot temperatures in the office.

27.     Bradley told Plaintiff that she recognized the poor work performance and that Plaintiff "looked like sh**." (Expletive redacted.)

28.     During or about July 2016, Defendant moved its office to a new location.

29.     On or about September 23, 2016, the air conditioning system in the new building malfunctioned, causing the temperature in the office to be at least 74 degrees when the thermostat was set to between 68 and 70 degrees.

30.     On or about September 23, 2016, Plaintiff sent multiple emails to Rafi alerting him to a problem with air conditioning in Defendant's new building.

31.     On or about December 13, 2016, Plaintiff sent emails to Rafi that included general

information regarding her MS and heat intolerance.

32.     The purpose of these emails was to again explain Plaintiff's symptoms and how they could contribute to reduced productivity.

33.     One of Plaintiff's co-workers, Courtney Walker ("Walker"), encouraged Plaintiff to fill out Family Medical Leave Act ("FMLA") paperwork so that she could take medical leave in order to get her MS symptoms under control.

34.     On or about April 17, 2017, Plaintiff told Bradley that she needed to take FMLA medical leave. Bradley emailed the company's insurance agent to get the process started.

35.     On or about June 6, 2017, Bradley informed Rafi and Adrian Al-Amin ("Adrian") that the air conditioning was still not working in the office.

36.     On or about June 7, 2017, Bradley told Plaintiff that she had emailed Rafi about the problems with the temperature and that he had responded saying the air conditioning would not be repaired for at least two weeks.

37.     Bradley also told Plaintiff at this time that she did not believe Rafi was being truthful about contacting the repair company.

38.     On or about June 8, 2017, the repair company arrived and attempted repairs to the air conditioning system in Defendant's warehouse, but not in Plaintiff's office.

39.     On or about June 12, 2017, Plaintiff asked Bradley for an update on the repairs. Bradley stated that there was nothing else that she could do at that time.

40.     On or about June 12, 2017, Walker complained to Rafi about the air conditioning system. Despite Plaintiff's repeated complaints resulting in no action being taken to repair the air conditioning, Rafi immediately contacted the repair company to schedule a service visit upon receiving Walker's complaint.

5

41.     On information and belief, Rafi took action regarding the heat problem in the office only when Walker complained about it because she is younger than Plaintiff.

42.     In doing so, Rafi created a discriminatory work environment that favored younger employees to those in Plaintiff's protected age class.

43.     Rafi continued to send Walker text messages in order to update her on the status of the repairs.

44.     On or about June 13, 2017, Walker assisted Plaintiff in filling out her FMLA paperwork.

45.     On or about June 16, 2017, Adrian and Bradley terminated Plaintiff's employment.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

46.     Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 45 above as if reiterated herein.

47.     Defendant intentionally discriminated against Plaintiff on the basis of her disabilities in one or more of the following ways:

    a.      Failing to reasonably accommodate her disabilities;

    b.      Terminating Plaintiff because of her disabilities; and/or

    c.      Terminating Plaintiff because of her repeated requests that Defendant reasonably accommodate her disabilities.

48.     Defendant's actions were in willful and wanton violation of Plaintiff's rights.

## COUNT II
## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

49.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 48 above as if fully reiterated herein.

50.     Defendant, in violation of the provisions of 29 U.S.C. § 623, denied Plaintiff an equal opportunity for employment because of her age.

51.     During Plaintiff's employment with Defendant, she was subjected to age discrimination in that there was a double standard between older employees and younger employees who were not included within the protected age class. Plaintiff's younger counterparts were not subjected to the discriminatory treatment to which Plaintiff was subjected.

52.     Defendant, through its employees, agents and/or authorized representatives, knew that its discriminatory treatment of Plaintiff because of her age violated the ADEA.

53.     This is a proceeding for declaratory judgment as to Plaintiff's right of a permanent injunction restraining Defendant from maintaining a policy, practice, usage or custom of discriminating against Plaintiff because of her age with respect to compensation, terms, conditions and/or privileges of employment, depriving Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her age. This Complaint also seeks restitution to Plaintiff for the denial of all of her rights, privileges, benefits and income that would have been received by her, but for Defendant's unlawful and illegal discriminatory acts and practices.

54.      Plaintiff has no plain, adequate or complete remedy at law to address the wrongs alleged herein, and this suit for injunctive relief is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policy, practice, custom and usage as set forth herein, unless and until it is enjoined by the Court.

**COUNT III**
**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**

55.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 54 above as if fully reiterated herein.

56.     The acts and conduct of Defendant as aforesaid were in willful violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* Said statutes impose certain duties upon Defendant concerning retaliation against persons, such as Plaintiff, on the basis of their exercise of FMLA leave and the prohibition of said retaliation. Said statutes were intended to prevent the type of injury and damage herein set forth.

57.     By the acts and conduct described above, Defendant was willfully in violation of said statutes, knew about, or should have known about, and failed to investigate, prevent or remedy the retaliation. The acts of retaliation described herein were sufficiently pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was retaliated against, Plaintiff's exercise of her FMLA leave was a substantial factor motivating and/or motivating reason in Defendant's conduct.

58.     By the aforesaid acts and conduct of Defendant, Plaintiff has been directly and legally caused to suffer actual damages pursuant to 29 U.S.C. § 2617 including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, and other pecuniary loss not presently ascertained.

59.     The aforementioned acts of Defendant were willful, wanton, malicious, intentional, and oppressive, and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendant and with the express knowledge, consent, and ratification of managerial agents and employees of Defendant, thereby justifying an award of punitive and exemplary damages in an amount to be determined at the time of trial.

60.     As a result of the acts of Defendant as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in 29 U.S.C. §2617(a)(3).

Wherefore, Plaintiff, KAREN DEWITT, respectfully prays this Honorable Court enter judgment against Defendant, AL-AMIN BROTHERS TRANSPORTATION, L.L.C., as follows:

a. Declaring the Defendant's practices complained of herein unlawful and in violation of the ADA, the ADEA, and the FMLA.

b. Permanently enjoining Defendant, its agents, successors, officers, employees, representatives, attorneys and those acting in concert with it or them from engaging in the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

c. Ordering modification or elimination of the practices, policies, customs and usages set forth herein and all other such practices shown to be in violation of applicable law, ensuring Defendant will not continue to discriminate on the basis of disability or age.

d. Immediately assigning Plaintiff to the position she would now be occupying but for the discriminatory practices of Defendant, and adjusting the wage rates, salaries, bonuses and benefits for Plaintiff to those which she would have received but for the discriminatory practices of Defendant, or awarding Plaintiff front-end and future pay;

e. Compensating and making Plaintiff whole for all earnings, wages, bonuses and other benefits that Plaintiff would have received but for the discriminatory practices of Defendant and the willful violations of Defendant;

f. Compensating and making Plaintiff whole for all other damages Plaintiff

incurred as a result of the discriminatory practices of Defendant and the willful violations of Defendant;

g.    Awarding Plaintiff all witness fees, court costs and other litigation costs incurred in this Action, including reasonable attorneys' fees; and

h.    Awarding Plaintiff liquidated and/or punitive damages for Defendant's willful conduct, and granting such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECTFULLY SUBMITTED

KAREN DEWITT

By:    /s/ David B. Levin
        Attorney for Plaintiff
        Illinois Attorney No. 6212141
        Law Offices of Todd M. Friedman, P.C.
        333 Skokie Blvd., Suite 103
        Northbrook, Illinois 60062
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com